# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**PABLITO VEGA,**

    Plaintiff,

    v.                                                                 Case No. 23-CV-1124-SCD

**ADJUDICATOR 4318,
ROHIT RANGARAJAN,
MICHAEL H. GILLICK,
GEORGIA E. MAXWELL,** and
**MARILYN TOWNSEND,**

    Defendants.

## DECISION AND ORDER GRANTING DEFENDANTS GILLICK, MAXWELL, AND TOWNSEND'S MOTION TO DISMISS

    This action concerns Pablito Vega's dissatisfaction with how the State of Wisconsin handled his claim for unemployment benefits under the Pandemic Unemployment Assistance program. Vega applied for benefits in June 2020, at the height of the COVID-19 pandemic. *See* ECF No. 1 at 1. A few months later, an adjudicator for the Wisconsin Department of Workforce Development (the state agency charged with making initial eligibility determinations) denied the application, claiming that Vega was ineligible for benefits due to his incarceration. An administrative law judge affirmed the denial. *Id.* at 2. Vega sought administrative review of the Department's decision by the Labor and Industry Review Commission. The Commission, through its commissioners, affirmed the ALJ's decision and denied Vega's application. Vega then sought judicial review by the Milwaukee County Circuit Court. The circuit court dismissed Vega's complaint because he failed to timely serve the

Commission with the summons and complaint. *Id.* at 1–2. That affirmance was upheld on appeal. *Id.* at 1.[1]

After exhausting the state appellate process, in August 2023, Vega filed a complaint in federal court under 42 U.S.C. § 1983 against the Department, the adjudicator and the ALJ who denied the benefits application on behalf of the Department, the Commission, and commissioners Michael Gillick, Georgia Maxwell, and Marilyn Townsend. *See* ECF No. 1. The complaint alleges, among other things, that the defendants violated Vega's right to due process by denying him several hearings and relying on the falsified statement that he was incarcerated during 2020. (Vega asserts that he was not incarcerated at all that year.) The matter was reassigned to this court after all parties consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b). *See* ECF Nos. 3, 6, 7, 23, 25, 27.[2]

On January 30, 2024, the commissioners moved to dismiss the complaint. *See* ECF No. 35. The following day, the adjudicator and the ALJ issued a notice of joining the commissioners' motion. *See* ECF No. 37. Vega eventually responded to the commissioners' motion, *see* ECF No. 52; the commissioners submitted a reply brief, *see* ECF No. 54; and the adjudicator and the ALJ joined the commissioners' reply, *see* ECF No. 55. Vega has also requested an in-person hearing on the motion. *See* ECF Nos. 56 & 57.

The individual defendants insist that the complaint must be dismissed for several reasons. *See* ECF Nos. 36. According to the defendants, Vega's claims are barred by the *Rooker-Feldman* doctrine, judicial immunity, and claim preclusion. They also contend that the

---

[1] *See Vega v. LIRC*, No. 2022AP1140, 2023 WL 3197347, 2023 Wisc. App. LEXIS 462 (Wis. Ct. App. May 2, 2023), *pet. for review denied* 2023 WL 9327506, 2023 Wisc. LEXIS 417 (Wis. Aug. 17, 2023).

[2] In April 2024, I granted the Department's and the Commission's motions to dismiss on sovereign immunity grounds. *See* ECF No. 40.

complaint fails to state a claim for relief because the Coronavirus Aid, Relief, and Economic Security (CARES) Act does not confer a private right of action to pandemic-related unemployment benefits and because this court lacks jurisdiction to award Vega the relief he seeks. The defendants ask that the complaint be dismissed with prejudice because the above reasons show that amendment would be futile.

### I. *Rooker-Feldman* Doctrine

"The *Rooker-Feldman* doctrine precludes federal courts from deciding cases 'brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Andrade v. City of Hammond*, 9 F.4th 947, 949 (7th Cir. 2021) (quoting *Hemmer v. Ind. State Bd. of Animal Health*, 532 F.3d 610, 613 (7th Cir. 2008)). The doctrine therefore blocks federal jurisdiction when four elements are present: (1) the federal plaintiff is a state-court loser; (2) the state-court judgment became final before the federal proceedings began; (3) the state-court judgment caused the alleged injury underlying the federal claim; and (4) the claim invites the federal district court to review and reject the state-court judgment. *See Gilbank v. Wood Cty. Dep't of Human Servs.*, No. 22-1037, 2024 WL 3616798, 2024 U.S. App. LEXIS 19244, at *17 (7th Cir. Aug. 1, 2024) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). The Seventh Circuit has added a fifth element, finding that "*Rooker-Feldman* does not apply to bar jurisdiction over a plaintiff's federal claim if she did not have a reasonable opportunity to raise her federal issues in the state courts." *Id.* at *17–18 (citing *Andrade*, 9 F.4th at 950).

It is clear from the face of Vega's complaint that he lost in state court and that the state-court judgment was final before he filed this action; however, the state-court judgment did not

3

cause the alleged injury underlying Vega's federal claim. The challenged conduct here—the denial of a hearing and the use of a falsified statement that led to the denial Pandemic Unemployment Assistance benefits—occurred before the Department and the Commission prior to any judicial involvement. But "because the *Rooker-Feldman* doctrine is concerned only with state court determinations, it presents no jurisdictional obstacle to judicial review of executive action, including decisions made by state administrative agencies." *Gilbert v. Ill. State Bd. of Educ.*, 591 F.3d 896, 900 (7th Cir. 2010) (citing *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 644 n.3 (2002)); *see also Hemmer*, 532 F.3d at 614 (finding that the *Rooker-Feldman* doctrine did not bar the claims of a plaintiff who lost in state agency proceedings). Vega's alleged injury was caused by a state agency, not a state court.

The fact that Vega sought judicial review of the Commission's decision in state court does not change this analysis. That review was limited and deferential, *see* Wis. Stat. § 108.09(7), and the court never reached the merits of Vega's claims, *see* ECF No. 1 at 1–2 (alleging that the circuit court dismissed the complaint for untimely service). *See Andrade*, 9 F.4th at 950–51 & n.1 (finding that the *Rooker-Feldman* doctrine did not apply to an alleged injury that occurred before a state administrative agency even though the state courts reviewed and affirmed the administrative decision). In other words, "[t]he complaint alleges, at most, 'an independent prior injury that the state court failed to remedy' and not an injury 'caused by the state court judgment.'" *Id.* at 950–51 (quoting *Sykes v. Cook Cty. Cir. Ct. Probate Div.*, 837 F.3d 736, 742 (7th Cir. 2016)). The *Rooker-Feldman* doctrine therefore does not preclude this court from hearing Vega's case.

## II. Judicial Immunity

Determining whether an official is entitled to absolute immunity involves a well-established, functional approach that looks "to the nature of the function performed, not the identity of the actor who performed it. . . . Absolute immunity is not limited to government officials with the title of prosecutor or judge." *Heyde v. Pittenger*, 633 F.3d 512, 517 (7th Cir. 2011) (quoting *Wilson v. Kelkhoff*, 86 F.3d 1438, 1443 (7th Cir. 1996)). Rather, "[a]bsolute immunity protects members of quasi-judicial adjudicatory bodies when their duties are functionally equivalent to those of a judge." *Id.* (citing *Butz v. Economou*, 438 U.S. 478, 512–13 (1978)). "Absolute immunity, however, applies only to judicial acts and does not protect the official from acts that are ministerial or administrative in nature." *Id.* (citing *Dawson v. Newman*, 419 F.3d 656, 661 (7th Cir. 2005)). "[T]he official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Id.* (quoting *Burns v. Reed*, 500 U.S. 478, 486 (1991)).

Here, the individual defendants' findings with respect to Vega's benefits application were judicial in nature and within the scope of the state agencies' jurisdiction. The State of Wisconsin delegated administration of the federal Pandemic Unemployment Assistance program—created pursuant to the CARES Act—to the Department for an initial eligibility determination. The Department adjudicator in this case analyzed the financial information Vega submitted and determined—incorrectly, according to Vega—that Vega was not eligible for benefits because he was incarcerated. *See* ECF No. 1 at 1, 4. That initial determination was within the scope the adjudicator's duties and, because it was subject to review by both an ALJ and the Commission, was judicial in nature. *See Cochran v. Kozloski*, No. 89-1879, 1990 U.S. App. LEXIS 8767, at *3–4 (7th Cir. May 30, 1990) (finding that administrative

5

adjudicators are entitled to judicial immunity when their decisions are subject to independent review). Likewise, the ALJ's action of reviewing the adjudicator's decision was functionally equivalent to that of a judge. *See Nowicki v. Delao*, 506 F. App'x 514, 517 (7th Cir. 2013) (finding ALJs absolutely immune from claims for damages under § 1983 when they perform judicial functions); *Mallum v. Wis. Laborers' Health Fund*, No. 16-CV-1190, 2017 WL 1740302, 2017 U.S. Dist. LEXIS 67420, at *6–7 (E.D. Wis. May 3, 2017) (finding Department ALJ entitled to judicial immunity for his rulings, orders, and case-management directions). The same is true of the Commission's action of reviewing the Department's decision. *See Satkar Hospitality Inc. v. Cook Cty. Bd. of Review*, 819 F. Supp. 2d 727, 732–33 (N.D. Ill. 2011) (finding county board of review commissioners entitled to absolute immunity); *Emiabata v. Bartolomeo*, No. 3:21-cv-00776 (OAW), 2022 WL 4080348, 2022 U.S. Dist. LEXIS 162622, at *21–26 (D. Conn. Jan. 3, 2022) (finding state labor commissioner entitled to quasi-judicial immunity for his benefit determination). Contrary to Vega's argument, the individual defendants in this case did not simply exercise a ministerial duty, and Vega has not pleaded any facts suggesting that they acted in the clear absence of all jurisdiction. The individual defendants are therefore entitled to absolute quasi-judicial immunity from suit for money damages for their actions.

### III. Claim Preclusion

"Claim preclusion, or res judicata, generally bars the relitigation of claims that were brought, or could have been brought, in an earlier suit that has reached final judgment." *Valbruna Slater Steel Corp. v. Joslyn Mfg. Co.*, 934 F.3d 553, 560 (7th Cir. 2019). "To decide the preclusive effect of a state-court judgment, and in the interest of affording full faith and credit to state-court judgments, 28 U.S.C. § 1738, [courts] look to the law of the state where the

judgment occurred." *Id.* (citing *Mains v. Citibank, N.A.*, 852 F.3d 669, 675 (7th Cir. 2017)). That's Wisconsin in this case.

"Wisconsin has adopted a transactional approach to claim preclusion." *Balcerzak v. City of Milwaukee*, 163 F.3d 993, 996 (7th Cir. 1998) (citing *N. States Power Co. v. Bugher*, 525 N.W.2d 723, 728 (Wis. 1995)). "Under this approach, if a second suit arises from the same transaction, incident, or factual situation as an initial suit, res judicata will bar the second suit." *Id.* The defense applies only if three factors are present: "(1) a prior suit that ended in a final judgment on the merits by a court of competent jurisdiction; (2) an identity of the causes of action in the two suits; and (3) an identity between the parties or their privies in the two suits." *Veit v. Frater*, 715 F. App'x 524, 527 (7th Cir. 2017) (citing *Kruckenberg v. Harvey*, 2005 WI 43, ¶ 21, 694 N.W.2d 879, 885).

It's not clear that any of the factors are present here. First, the parties in this case are not the same as the parties in the state-court action. The state-court action was between Vega and the Commission. Although the commissioners are considered in privity with their employing state agency, neither the Department nor its individual employees were part of the state proceeding. Second, based on the pleadings, I cannot say that this case involves the same causes of action as the state case. True, both involve the same set of facts and the denial of pandemic-related benefits. But here Vega alleges that his due process rights were violated during the proceedings before the Department and the Commission. I simply don't know if that was an issue in the state-court action. Finally, and perhaps most importantly, the state courts did not reach a final judgment on the merits of Vega's claims. The individual defendants do not dispute that the state action was dismissed for untimely service, so the state

7

courts never addressed the merits. Because I am not satisfied that all three factors are present, claim preclusion does not prevent this court from hearing Vega's federal claims.

IV.     **Right to Relief**

Vega argues in response to the individual defendants' motion to dismiss that he's seeking not only the pandemic-related benefits wrongly denied to him, but also $150,000 in damages from each individual defendant. *See* ECF No. 52 at 3–4. However, the only relief Vega requests in his complaint is an order compelling the release of benefits. *See* ECF No. 1 at 9.[3] Those benefits are administered by the State of Wisconsin, not the federal government. Thus, Vega's sole remedy for the denial of benefits was to seek judicial review of the Commission's administrative decision in a Wisconsin circuit court, which he did. *See* § 108.09(7); *see also Mayfield v. Dir. of the Dep't of Workforce Dev.*, No. 22-CV-219, 2022 WL 561903, 2022 U.S. Dist. LEXIS 32307 (E.D. Wis. Feb. 24, 2022) (recommending the dismissal of a complaint against the Department challenging the denial of unemployment benefits). Moreover, courts throughout the country, including within the Seventh Circuit, have consistently held that Congress did not create a private cause of action for pandemic-related benefits when it passed the CARES Act. *See, e.g.*, *Graham v. Payne*, No. 3:21-CV-888 DRL-MGG, 2022 WL 815138, 2022 U.S. Dist. LEXIS 47544, at *4 (N.D. Ind. Mar. 17, 2022) (collecting cases). Vega therefore fails to state a claim upon which relief can be granted.

*     *     *

Accordingly, for all the foregoing reasons, the court **GRANTS** the motion to dismiss filed by defendants Michael Gillick, Georgia Maxwell, and Marilyn Townsend, ECF No. 35, which was joined by defendants Adjudicator 4318 and Rohit Rangarajan, ECF No. 37.

---

[3] Indeed, it wasn't clear from the face of the complaint that Vega was pursuing individual capacity claims.

Because Vega cannot plead around the quasi-judicial immunity issue, the court **DISMISSES** the complaint **WITH PREJUDICE** as to Adjudicator 4318, Rohit Rangarajan, Michael H. Gillick, Georgia E. Maxwell, and Marilyn Townsend and **DENIES** the plaintiff's motions for an in-person hearing, ECF Nos. 56 & 57. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 520 (7th Cir. 2015) ("Where it is clear that the defect cannot be corrected so that amendment is futile, it might do no harm to deny leave to amend."). The clerk of court shall enter judgment that this entire action is dismissed and that Vega shall take nothing from any of the defendants by his complaint.

 **SO ORDERED** this 17th day of September, 2024.

_____
STEPHEN C. DRIES
United States Magistrate Judge

9

Case 2:23-cv-01124-SCD Filed 09/17/24 Page 9 of 9 Document 58